# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19-cv-1849 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| FIRST FINANCIAL CORPORATE | ) | |
| SERVICES, INC., a California corporation, | ) | |
| THOMAS SLEVIN, and RICHARD | ) | |
| STEBBINS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORADUM OPINION AND ORDER

For the reasons stated below, the Individual Defendants' motion to dismiss for lack of personal jurisdiction [14] is granted without prejudice. Plaintiff is given leave to file an amended complaint by March 23, 2020, if he (1) still wishes to pursue relief against the individual Defendants in this lawsuit and (2) believes that he can cure the deficiencies identified below. This case is set for further status hearing on March 26, 2020, at 9:00 a.m. The Court requests that the parties file a joint status report no later than March 24, 2020, advising the Court of (1) the progress of discovery to date, (2) any further discovery that may be needed, (3) whether the parties anticipate any experts, (4) whether any party anticipates filing a motion for summary judgment, and (5) whether the parties are interested in a settlement conference.

## I. Factual Background

Plaintiff Michael Ross has filed this lawsuit against his former employer, Defendant First Financial Corporate Services, Inc. ("First Financial"), and its co-founders and co-Presidents, Defendants Thomas Slevin and Richard Stebbins. The lawsuit seeks more than $300,000 in commissions to which Plaintiff claims he was entitled, plus interest and attorneys' fees and costs.

Plaintiff contends that the corporate Defendant is liable for breach of contract and that all three Defendants have committed violations of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/3 and 115/4. According to Plaintiff, under the IWPCA, officers of a corporation are deemed "employers" if they knowingly permit the corporation to violate the IWPCA. Based on that theory, Plaintiff urges the Court to impose joint and several liability on all Defendants for any violations of the IWPCA. In the alternative, if Defendants are not "employers" pursuant to the Illinois Wage Payment and Collection Act, 815 ILCS 205/2, Plaintiff seeks alternative relief pursuant to California Labor Code Section 200, et seq.

According to the complaint, in March 2010, Plaintiff and First Financial executed a Sales Employee Agreement pursuant to which Plaintiff would be paid commissions based on his sales of First Financial's financial services throughout the United States. For almost eight years, Plaintiff generated millions of dollars in sales of First Financial's products. Until January 1, 2017, First Financial paid commissions to Plaintiff in accord with the Sales Employee Agreement under annual commission plans. In February 2017, First Financial announced a new Commission Plan which included an annual threshold of $7 million of fair market value lease sales and imposed a commission hold back and forfeiture penalty of 42.85% on commissions that Plaintiff earned had prior to the announcement. Plaintiff was advised that if he did not sign the 2017 Commission Plan, he would no longer be paid commissions. According to Plaintiff, First Financial neither offered nor supplied any consideration to for this new Commission Plan or the elimination of Plaintiff's rights under prior years' annual commission plans. Through this lawsuit, Plaintiff seeks to recover the hundreds of thousands of dollars in commissions that he claims to have earned and demanded, but was not paid.

The instant motion raises a straightforward question: are the individual Defendants subject to personal jurisdiction in this Court? It is worth noting at the outset that the corporate Defendant, First Financial, has not challenged the Court's jurisdiction. But the individual Defendants claim to have had so few contacts with Illinois that they must be dismissed from this lawsuit.

The complaint says very little about either individual Defendant. As to Defendant Slevin, the complaint alleges only that he is "an officer, agent and director of Defendant FIRST FINANCIAL CORPORATE SERVICES, INC. and a resident of San Francisco, California." In similar fashion, the complaint states that Defendant Stebbins is "an officer, agent and director of Defendant FIRST FINANCIAL CORPORATE SERVICES, INC. and a resident of Fullerton California." All of the general allegations setting forth the history of Plaintiff's relationship with First Financial refer generally to the company, spelling out no details as to who at the company communicated with Plaintiff—either orally or in writing—at any stage of his employment in regard to his employment contract, the duties of his job, or the terms of his compensation. The only other mention of the individual Defendants comes toward the end of the complaint, where Plaintiff asserts a state statutory right to hold Slevin and Stebbins, as officers, agents, and directors of First Financial, jointly and severally liable for the unpaid commissions at the heart of the case.

In support of their motion to dismiss, Defendants have submitted sworn declarations. Each states that he co-founded First Financial and has served as a co-President since 2000. Their declarations further state that First Financial is headquartered in Placentia, California, where each co-President maintains an office. Slevin avers that he has lived in California since 1995, except for a stint in New Jersey between 2003 and 2006, and confirms that he currently lives in San Francisco. He acknowledges living and working in Illinois from August 1994 through March 1995, but maintains that he neither rents nor owns any property in Illinois, nor does he have a

mailing address, telephone number, bank account, or personal business office in Illinois. Slevin asserts that he has not entered into any contracts or personally conducted any business in Illinois. He estimates that he has visited Illinois approximately twice per year over the nearly two decades that he has managed First Financial. Stebbins' declaration mirrors Slevin's in all but a few respects, including that Stebbins has lived in California since 1982, maintains his residence in Fullerton, and has not lived in Illinois since 1974.

Defendants also have submitted a copy of Plaintiff's Sales Employee Agreement, which notes Plaintiff's address in Elmhurst, Illinois and includes a provision stating that the Agreement will be governed by the laws of the State of California. Defendants' other exhibits pertain to an August 2013 email from Plaintiff indicating a "residence of record" in Long Beach, Indiana, where Plaintiff advised he worked 60%+ of his time while keeping the office address in Elmhurst, Illinois noted in the Agreement "as the office address and mailing address for all contact with [First Financial]."

In his response, Plaintiff provides his own sworn declaration. In it, he sets forth details about the role of both individual Defendants in the running of First Financial. Plaintiff states that Slevin and Stebbins hold a majority of the company's shares and all of its voting shares. According to Plaintiff, as co-Presidents, Slevin and Stebbins managed the day-to-day operations of the company, including the hiring, firing, and direction of the work of First Financial employees in Illinois. He further avers that Slevin and Stebbins made decisions regarding the terms and conditions of employee compensation, such as Plaintiff's Sales Employee Agreement and the annual commission plans. Plaintiff also points to decisions made by the individual Defendants concerning capital expenditures, banking relationships, and other day-to-day decisions about First Financial's business in Illinois.

4

More generally, Plaintiff contends that First Financial has maintained an office in Illinois since 2003 and has had as many as seven employees in the state. Plaintiff identifies management responsibilities of both individual Defendants: Slevin ran the sales force in Illinois; Stebbins handled the material handling equipment and healthcare businesses. In those capacities, both Slevin and Stebbins traveled to Illinois from time-to-time. They also dealt with equipment vendors and banks in Illinois. Plaintiff notes that First Financial was registered with the Illinois Secretary of State to do business in Illinois, had a designated agent for service and process, and did $25 million in lease business with major customers in Illinois.

## II. Legal Standard

A complaint need not allege personal jurisdiction, but once a defendant moves to dismiss on that ground, the plaintiff bears the burden of establishing that jurisdiction is proper. *Purdue Res. Found v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Where, as here, a defendant moves to dismiss a complaint for lack of personal jurisdiction "based on the submission of written materials, without the benefit of an evidentiary hearing, the plaintiff need only make out a *prima facie* case of personal jurisdiction." *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). In this case, Plaintiff asserts claims arising under Illinois common law and an Illinois statute. There is no federal statute authorizing nationwide service of process in such cases; therefore, this Court sitting in Illinois may exercise jurisdiction over the individual Defendants only if authorized both by the United States Constitution and Illinois law. See *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (citing Fed. R. Civ. P. 4(k)(1)(A); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)). Illinois' long-arm statute "permits its courts to exercise personal jurisdiction on any basis permitted by the constitutions of both Illinois and the

United States." *Id.*; see 735 ILCS 5/2-209(c). Thus, in this case, "the state statutory and federal constitutional inquiries merge." *Tamburo*, 601 F.3d at 700.

The federal test for personal jurisdiction under the Due Process Clause of the Fourteenth Amendment authorizes a court to exercise jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In other words, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The requirement that a defendant have "minimum contacts" with the forum ensures that a non-resident defendant will not be forced to litigate in a jurisdiction as a result of "random, fortuitous, or attenuated contacts" with the forum or the unilateral activity of the plaintiff; the defendant "should reasonably anticipate being haled into court" there. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

As the Supreme Court has reiterated, "[t]he canonical opinion in this area remains *International Shoe*, * * * in which [the Court] held that a State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). "*International Shoe*'s conception of 'fair play and substantial justice' presaged the development of two categories of personal jurisdiction"—specific and general.

*Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014); see also *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012) ("In the realm of personal jurisdiction, federal constitutional law draws a sharp and vital distinction between two types of personal jurisdiction: specific or case-linked jurisdiction, and general or all-purpose jurisdiction.").

General (or "all-purpose") jurisdiction) exists only "when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Daimler*, 134 S.Ct. at 751 (quoting *Goodyear*, 131 S.Ct. at 2851) (internal quotation marks and alteration omitted). The Seventh Circuit has observed that "[i]n recent years, the Supreme Court has clarified and, it is fair to say, raised the bar for this type of jurisdiction[,] * * * emphasiz[ing] that is should not lightly be found." *Kipp v. Ski Enter. Corp. of Wisc., Inc.*, 783 F.3d 695, 698 (7th Cir. 2015). Thus, the criteria set out in *Daimler*—whether the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State"—"require more than the 'substantial, continuous, and systematic course of business' that was once thought to suffice." *Kipp*, 783 F.3d at 698. Sizable sales in a jurisdiction, for example, are not enough, though evidence that a defendant did "over half" of its business in a state "is more the type of contact that could make a corporation 'at home' in [that] state." *Nicholson v. E-Telequote Ins., Inc.*, 2015 WL 5950659, at *5 (N.D. Ill. Oct. 13, 2015).

Specific jurisdiction exists when the lawsuit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). As the Seventh Circuit explained earlier this month, the Supreme Court has "distilled three "essential requirements" for the exercise of specific jurisdiction over an out-of-state defendant:

> First, the defendant's contacts with the forum state must show that it "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state." Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*Curry v. Revolution Laboratories, LLC*, — F.3d —, 2020 WL 613820, at *8 (7th Cir. Feb. 10, 2020) (quoting *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019) (alterations in original) (quoting *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012)). Thus, whether specific personal jurisdiction over a defendant exists depends on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

## III. Discussion

The Court turns first to general jurisdiction. The affidavits of record make clear that First Financial has had a "substantial, continuous, and systematic course of business" in Illinois since at least 2003. Indeed, the corporation has not disputed that personal jurisdiction over it exists in this district. But does the company's presence in Illinois automatically subject its officers to suit in that forum? While it is clear that each of the individual Defendants had management responsibilities for some aspects of the company's work in Illinois, it is equally apparent that the company had nationwide operations and that each individual Defendant spent only a tiny fraction of the work year in Illinois. Defendants estimate that they have travelled to Illinois approximately twice per year over the past two decades; Plaintiff pegs the number at "multiple times per year." In no event can those contacts be considered extensive enough to make the individual Defendants "at home" in Illinois, especially after *Daimler*, when the Supreme Court established that specific jurisdiction "require[s] more than the 'substantial, continuous, and systematic course of business' that was once thought to suffice." *Kipp*, 783 F.3d at 698.

Whether specific jurisdiction exists over the individual Defendants presents a closer question. A key inquiry, as the Seventh Circuit reminded us earlier this month, is the presence of a "'connection between the forum and the specific claims at issue.'" *Curry*, 2020 WL 613820, at *10 (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017)). Here, the specific claim arises out of the failure of Defendants to pay certain commissions to Plaintiff. According to Plaintiff, his commissions were to be paid pursuant to the Sales Employee Agreement and the annual commission plans that had been issued by Slevin and Stebbins from the time he started with the company in 2010. Plaintiff contends that the company announced a new commission plan in February 2017, but that it neither offered nor supplied any consideration for the new plan or for the elimination of Plaintiff's rights under the old plan. He further claims to have been advised that if he did not sign the 2017 plan, he would no longer be paid commissions. The Court infers from these allegations—contained in the complaint and Plaintiff's declaration—that (1) he was satisfied with the commissions arrangements from 2010 until 2017 (and in fact asserts a right to continue receiving commissions on the basis of those arrangements) and (2) he declined to sign the 2017 commission plan and thus did not receive any commissions from January 1, 2017 until his last day at the company in late January 2018.

Notably absent from Plaintiff's recitation of the facts is any involvement of either individual Defendant in the revised 2017 commission plan. Plaintiff does not relate any of the specifics of his communications about that plan: Who advised him of the new policy? To whom did he complain about its unilateral abrogation of his rights or his missing commissions? Plaintiff does say that Slevin and Stebbins "managed and made decisions regarding the terms and conditions of an employee's employment with First Financial, including an employee's compensation, as set forth in First Financial's employment agreements, such as my Sales


Employee Agreement and the annual compensation plans issued by Slevin and Stebbins." [25-1, at 4.]. But Plaintiff's own allegations indicate no dissatisfaction with the compensation (and commission) arrangements under his "Sales Employee Agreement and the annual compensation plans issued by Slevin and Stebbins," and instead place the blame for the dispute underpinning both claims on the new arrangements sprung on him in February 2017, without any indication that either Slevin or Stebbins had anything to do with them. Perhaps this was an oversight—easily curable with an amended complaint. See *Crisostomo v. Schneider-Kidan*, 2017 WL 2880893, at *4 (N.D. Ill. July 6, 2017) (finding specific jurisdiction where plaintiff alleged that individual defendant was CEO and owner of company and "was involved in 'devising, directing, and supervising' [the company's] compensation practices, which 'includ[ed] the decision not to pay Plaintiff his earned wages and commission'"); *Farmer v. DirectSat USA, LLC*, 2010 WL 380697, at *9 (N.D. Ill. Jan. 28, 2010) (finding specific jurisdiction where "Plaintiffs have generally alleged that Defendants' actions damaged Illinois employees, that Plaintiffs are seeking unpaid wages as damages for their claims, and that these three proposed individual defendants were responsible for implementing wage and hour policies and had a direct role in establishing DirectSat's Illinois office"). Or perhaps Slevin and Stebbins had turned those kinds of management details over to others by 2017, in which case their lack of involvement in the events giving rise to the "specific claims at issue" would negate the assertion of specific jurisdiction in this lawsuit.

## IV. Conclusion

At present, even reading the complaint liberally and drawing reasonable inferences in favor of Plaintiff, the facts of record fall short of establishing a *prima facie* case of personal jurisdiction, as neither individual Defendant can be said to have been "at home" in Illinois during the relevant time period or involved in the 2017 changes to the commission structure that give rise to the

specific claims at issue in the case.  Accordingly, the Individual Defendants motion to dismiss for lack of personal jurisdiction [14] is granted.  With that said, (1) jurisdiction over the corporate Defendant remains secure and (2) Plaintiff is given leave to file an amended complaint by March 23, 2020, if he still wishes to pursue relief against the individual Defendants in this lawsuit and believes that he can cure the deficiencies identified above.  This case is set for further status hearing on March 26, 2020 at 9:00 a.m.  The Court requests that the parties file a joint status report no later than March 24, 2020 advising the Court of (1) the progress of discovery to date, (2) any further discovery that may be needed, (3) whether the parties anticipate any experts, (4) whether any party anticipates filing a motion for summary judgment, and (5) whether the parties are interested in a settlement conference.

Dated:  February 25, 2020  _____
Robert M. Dow, Jr.
United States District Judge